## Peoples Nat. Bank v. Guier et al.

Dec. 10, 1940.

Joe L. Price, Judge.

Boyd & Boyd for appellant.

Albert Karnes and Wheeler & Shelbourne for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and reversing in part.

There are two questions presented, namely, (1) whether a devisee and creditor of a decedent's estate may join by amendment to their petition seeking a settlement of the estate an action against a depository bank and the creditors of a discharged executor to recover funds wrongfully paid by him; and (2) whether the bank is liable for the whole amount because it honored checks of the executor given in payment of his personal debts.

Richard G. Sommers made certain bequests, including $500 to Mrs. Lorena Guier, and devised the residue to A. L. Scott, whom he named executor. There came into his hands $3,924.84, the principal part of which was proceeds of a War Risk insurance policy and bonus certificate. Suit was filed by Mrs. Guier to construe the will and to settle the estate. It developed that Scott had paid out all of the funds, principally to his own creditors. While the suit was pending he was removed as executor and Florence Gibbs qualified as administratrix de bonis non with will annexed of the Sommers estate. She intervened in the Guier suit and recovered a default judgment against Scott for the sum he had dissipated. Later she sued the Peoples National Bank of Paducah, in which the funds had been deposited, to recover the same from it upon the ground that the bank had knowingly honored the executor's checks to various persons in payment of his individual debts. They were also made parties and a recovery was sought from each of them for the amount he had received. The court ruled that the administratrix de bonis non with the will annexed could not maintain that action either under Section 3846-1 et seq., Statutes, or the common law, and we affirmed the judgment dismissing the suit against the bank and Scott's creditors. Gibbs v. Peoples National Bank, 278 Ky. 415, 128 S. W. (2d) 958.

Meanwhile, the Standard Life Insurance Company, and its receiver, had been awarded a judgment foreclosing a lien on the decedent's real estate, and Mrs. Guier had been declared entitled to $500 as a bequest, which would be in satisfaction of her claim for nursing the decedent. After our decision in the administratrix' appeal, Mrs. Guier filed an amended petition in which she re-affirmed the allegation of her petition seeking a settlement of the estate and other appropriate relief; pleaded the recovery of her judgment, alleging that no part of it had been paid; set up the deficiency judgment of $2,107 held by the insurance company's representatives; and alleged the wrongful payments by the former executor to his personal creditors with the concurrence of the bank as depository. It was further alleged that the plaintiff, Mrs. Guier, and the insurance company's representatives could not collect the full amount of their judgments unless these sums were recovered. Later a joint amended petition was filed by these parties sub-

stantially repeating the allegations and prayers of the Guier amendment and alleging that there were other creditors of the estate similarly situated. It was pleaded that all the assets would not be sufficient to pay the decedent's debts and asked that they be prorated among his creditors.

The court overruled special and general demurrers to these amended petitions and proof was taken on the issues. It was adjudged that Sommers' estate was indebted to Lorena Guier in the sum of $500, with interest from December 12, 1936, and to the insurance company's representatives in the sum of $2,107.38, with interest from November 8, 1938, and had theretofore been adjudged. It was further adjudged that Scott as executor had wrongfully and unlawfully paid money of the estate to 16 named defendants in the sums severally set out and that the aggregate would not be enough to pay Sommer's creditors and the costs of administration in full. Accordingly, judgment was rendered against each of those defendants in favor of Mrs. Guier and the insurance company representatives. It was found that other creditors had been paid or had not filed claims. The Peoples National Bank was adjudged to be liable only for the amount received by it from Scott in settlement of his personal note due the bank, viz., $780, and not to be liable for the entire sum wrongfully paid out by him on the ground of its having permitted the diversion of the trust deposit.

The bank appeals from the judgment rendered against it. The other defendants do not appeal. Mrs. Guier and the insurance company's representatives prosecute a cross-appeal from so much of the judgment as relieves the bank from liability for the entire sum dissipated by Scott.

The appellant takes the position that the amended petition of Sommers' devisee and creditor pleads a new and distinct cause of action in seeking a recovery of the dissipated fund from the executor's creditors and from the bank; that the suits may not be joined because one is an action on contracts and to construe the will and the other is an action for a tort; that there was no contractual relationship between the estate and Scott's creditors or the bank, since they were neither creditors nor debtors of the testator; that there was no unity of interest of these defendants and no authority in the

petitioners under Section 24 of the Civil Code of Practice to join them in one action. It is further claimed as to many of the defendants that the amount involved was not enough to give the circuit court jurisdiction. If the premises of the argument are true, the appellant's position is well taken; otherwise, it is not.

One who knowingly takes advantage of a devastavit or conversion is answerable to those entitled to the estate. Yager's Adm'r v. President, etc. of Bank of Kentucky, 125 Ky. 177, 100 S. W. 848, 30 Ky. Law Rep. 1287; 11 R. C. L. 270; 21 Am. Jur., Executors and Administrators, Sections 310, 1016. While conversion is essentially a tortious taking of another's property, it is certain that there is also a contract implied in law to return the property to the rightful owner. And it is equally certain that the tort may be waived and an action of assumpsit or its equivalent may be maintained. 2 R. C. L. 754. Where money is involved, as it is in this case, there is a right of action for money had and received, which is equitable in its nature and maintainable in all cases where one person has received the money of another entitled to it, either directly or through a third person, under such circumstances that in equity and good conscience he ought not to retain it. First State Bank v. Vories, 195 Ky. 96, 242 S. W. 18; 2 R. C. L. 778, 786. The presence of actual fraud is not essential to the invocation of the remedy. Ambrose v. Graziani, 197 Ky. 679, 247 S. W. 953.

Ordinarily, the sole right of action for the conversion of the assets of an estate rests in the personal representative. But as we have held in this case, his successor could not maintain the suit to reclaim from the recipients money converted by the former personal representative. The theory is that they are assets that have been administered already. Section 3846-1, Kentucky Statutes, which seemed to have granted such a right had the corollary effect of preventing heirs or distributees from maintaining such action against the delinquent executor or administrator or his surety on account of devastavit except in the special circumstance of refusal of the administrator de bonis non to do so upon request. Fidelity & Deposit Company of Maryland v. Barrett, 271 Ky. 163, 111 S. W. (2d) 631. Of particular application is Tevis v. Brown's Adm'r, 3 J. J. Marsh. 175, 26 Ky. 175, where it was held that a

widow, who was a co-executor of her husband's will and had a life estate in the devised property, could maintain an action in her individual capacity for money received against the estate collected by the co-executor and used by him in the firm's business with such partner's knowledge.

It is an equitable doctrine that trust funds transferred to third persons having knowledge of their character remain impressed with the obligations of the trust and beneficiaries, or, in the case of the decedent's estate, legatees and distributees may follow and reclaim them. We have specifically recognized that the proceeding for recovery is or may be in equity since generally no one may sue at law except the personal representative. Thomas v. White, 3 Litt. 177, 13 Ky. 177, 14 Am. Dec. 56; McChord v. Fisher's Heirs, 13 B. Mon. 193, 52 Ky. 193; 21 Am. Jur., Executors and Administrators, Section 1018. It is clear also that a claim of this character may be pursued in equity as well as in law upon the theory that equity will consider the recipient as constructive trustee of the funds by operation of law. Restatement of the Law of Trusts, Section 288; Perry, Trusts and Trustees, Section 217; Farmers Banking & Trust Company v. Bender, 175 Md. 625, 3 A. (2d) 743. Therefore, it cannot be accurately said that there is a misjoinder of actions ex delicto with an action ex contractu. There is a joinder of two equitable suits, both of which were maintainable by the plaintiffs, for, obviously, it is undisputed that they had the right to institute and prosecute the suit to settle the decedent's estate.

Undoubtedly the plaintiffs could have maintained separate and individual suits against the several alleged recipients of the misapplied funds to recover a sum sufficient to satisfy their demands as distributee and creditor. The question remains whether those defendants as a group could be brought into the suit to settle the estate.

The statutory authority for the bringing of the settlement suit, Section 428, Civil Code of Practice, prescribes that the "creditors of the decedent, so far as known to the plaintiff, must be parties to the action as plaintiffs or defendants." The beneficiaries of the devastavit committed by a personal representative, of course, are not creditors of the decedent and consequent-

ly are not necessary parties to such a suit. Citizens' National Bank v. Boswell's Adm'rs, 93 Ky. 92, 19 S. W. 174, 14 Ky. Law Rep. 17. The question is: Are they proper parties? Obligations incurred for the burial are not the decedent's obligations, strictly speaking, yet it is a common practice to make the funeral director a party to a suit to settle the estate where he has not been previously paid, and it is recognized in the practice that such a debtor has the right to maintain a suit to settle the estate. It often occurs that the relation of debtor and creditor arises between a personal representative and another during the course of the administration, and it is recognized as proper for the personal representative to join a cause of action which accrued to the decedent with one accruing to himself in a representative capacity whenever the money recovered will be assets of the estate. 24 C. J. 818. The collection of rents and profits of the estate is a familiar and common instance.

In Johnson v. Dodd's Adm'r, 238 Ky. 194, 37 S. W. (2d) 26, 77 A. L. R. 975, it was disclosed in a suit to settle an estate maintained by creditors that the administrator had voluntarily paid some claims in full and left others unpaid. The estate was insolvent. Judgment was awarded some of the unpaid creditors against the administrator and the surety on his bond for what they should have received in a pro rata distribution. One of those creditors, Mrs. Pendleton, filed an intervening petition for her own use and for the benefit of others against the administrator, the surety on his bond and the creditors who had been paid in full seeking a recovery for her proportionate share of the estate. An election being required, she chose to proceed against the creditor. We held the circuit court had erroneously sustained a demurrer to her intervening petition and dismissed it, pointing out that she and all other parties were creditors of the decedent's estate and that the administrator having refused to recover the overpayments, as required by Section 3877 of the Statutes, the prejudiced creditors could do so. This was, as we said, to the end that the estate could be properly and completely administered by the court. We appreciate that there is a distinguishing feature in the causes of action. In that case there was only a breach of duty by the administrator and all parties concerned were creditors of the decedent. In this one there was a conversion of the as-

sets to strangers of the decedent. But the primary object is the same, namely, a closing out or settlement of the estate in one action.

It has been said that one who causes two blades of grass to grow where only one grew before is a benefactor, but such tribute would hardly be deserved by causing two of more lawsuits to be brought and prosecuted when one will achieve the same thing. After the original petition in equity was filed in the instant case by those entitled to file it, they discovered that others than the defendants named had wrongfully come into possession of money belonging to the estate through the wrongful action of the executor, and that without its recovery the payment of their claims and the ultimate end sought in the original suit could not be accomplished until the money was recovered from those who had become debtors of the estate by implication of law. It is to be borne in mind that the settlement is not to be had as of the date of death but as of the present hour. No reason appears why issues and causes like that before us should not be tried as a branch of the original suit to marshal the assets and distribute them, thereby avoiding an undesirable and unnecessary multiplicity of suits and circuity of action. Cf. Wiman v. First Christian Church, 273 Ky. 821, 117 S. W. (2d) 989.

This is in harmony with the familiar rule that equity will seize all elements and branches of a case and fully determine it. Givens v. Turner, 272 Ky. 211, 113 S. W. (2d) 1166. And it is in accord with the terms of Section 28 of the Civil Code of Practice which requires that all persons necessary to the determination of a controversy shall be made parties if the court cannot end it without prejudicing the rights of such persons. The parties plaintiff in this case seeking a settlement of the estate could not have it complete without a disposition of the issues raised by the amended petitions, and we perceive no prejudice resulting to the defendants thereby brought in by having the controversy disposed of once for all. Such procedure was not questioned in Taylor v. Harris' Adm'r, 164 Ky. 654, 176 S. W. 168, where there was an analogous state of facts. The law has outgrown its primitive formalism. The adoption of the Code of Practice was itself a far step, and even in its interpretation a meticulous adherence to the letter must be surrendered to its spirit and purpose. We

conclude, therefore, that it was proper to bring into the settlement suit the parties who had received the money of the estate without legal right and to litigate the entire matter in it. Such conclusion carries down with it the argument of the appellant that the amounts sought against some of the parties as being several substantive causes of action was not enough for the jurisdiction of the circuit court. It was the settlement of a decedent's estate and, as well, the entire trust fund that determined jurisdiction. The only grounds upon which a reversal of the judgment is sought on the direct appeal cannot be sustained.

The case of action against the bank as a depository is not altogether of the same character as that against the recipients of the fund. Although its liability may be regarded as for a tort (American National Bank v. Fidelity & Deposit Company, 129 Ga. 126, 58 S. E. 867, 12 Ann. Cas. 666), it rests upon participation with the executor in a breach of trust. Therefore, it is liable in equity for damages if the bank knew or if the circumstances were such as to have informed it that the fiduciary was withdrawing the estate's deposit for his own personal use. Duckett v. National Mechanics' Bank, 86 Md. 400, 38 A. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513. As we have seen, the appellant received some of the fruit of the misappropriation, and, as presently shown, its officers had actual knowledge of other diversions, or, at least, of a purpose or plan of the executor to use the funds for his private benefit. By not taking some action to prevent it the bank became a party to the misapplication and stands in the same situation as the executor. It made itself an instrumentality to the commission of the wrong. First National Bank of Paducah v. Harris' Adm'r, 164 Ky. 654, 176 S. W. 168; Mitchell v. First National Bank, 203 Ky. 770, 263 S. W. 15; Bischoff v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059; Grace v. Corn Exchange Bank Trust Company, 171 Misc. 522, 14 N. Y. S. (2d) 400; 7 Am. Jur., Banks, Section 521. Hence, the right to proceed against the bank in equity is apparent so there was no misjoinder in bringing it into the settlement suit to answer the charges of the amended petition.

Under general equity rules relating to the liability of a bank for the diversion of a trust deposit, it was sometimes harsh to apply such a high degree of alert-

ness in the ordinary conduct of business. The rule almost made the bank a surety or overseer of its depositor. The severity appeared where there was no certainty of knowledge of the character of the deposit or of its improper disbursement. We have held under general law that where checks payable to an agent or fiduciary were deposited in an individual account it was charged with knowledge of the character of the fund as a trust, and if it honored checks of the agent or fiduciary to pay his personal obligations, and thus misappropriate the proceeds, the bank was liable. Ducker v. Latonia Deposit Bank, 242 Ky. 374, 46 S. W. (2d) 493, and cases therein cited. See, also, National Surety Company v. McNeill's Guardian, 251 Ky. 509, 65 S. W. (2d) 721.

In 1930, Kentucky adopted in part the Uniform Fiduciaries Act, proposed by the National Conference of Commissioners of Uniform State Laws, which changed somewhat the pre-existing law as to the liability of one dealing with a fiduciary. Acts of 1930, Chapter 14; Section 4711-1, et seq., Kentucky Statutes. As is pointed out in a note in 114 A. L. R. 1088, the provisions of the act do not make due care or negligence the test of liability but, in general, make liability dependent on actual knowledge or bad faith. Section 4711-6, Kentucky Statutes, is as follows:

"If a deposit is made in a bank to the credit of a fiduciary as such, the bank is authorized to pay the amount of the deposit or any part thereof upon the check of the fiduciary, signed with the name in which such deposit is entered, without being liable to the principal unless the bank pays the check with the actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith."

Section 7 of the Uniform Act contains the following additional provision not adopted in this state:

"If, however, such a check, is payable to the drawee bank and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check."

That additional provision, however, simply expresses the general equity rule apparently recognized everywhere.

Our adoption of the definitions in the Uniform Act (Section 4711-1, Kentucky Statutes) omits that of "good faith," which within the meaning of the act is declared to be something "in fact done honestly, whether it be done negligently or not." In New Amsterdam Casualty Company v. National Newark & Essex Banking Company, 117 N. J. Eq. 264, 175 A. 609, 616 (affirmed on opinion below in 119 Eq. 540, 182 A. 824), it is pointed out that while "good faith" is defined in the act the term "bad faith" is not. The court then declared:

> "Read in the light of its statutory context, bad faith, with its sinister implications, means knowledge by any responsible agency, officer, or employee, of a bank, of an incriminating state of facts, short of actual knowledge of the breach of trust, but conscious of it and aiding and abetting, or acquiescing in the breach." See Note 114 A. L. R. 1090.

In the absence of the legislative acceptance of the specific definition of "good faith" in the Uniform Act, we are justified in looking to the Negotiable Instruments Act for the meaning of the term "bad faith" used in the Fiduciaries Act. Section 4711-6, Statutes, above quoted. Section 56 of the Negotiable Instruments Act, Section 3720b-56, Kentucky Statutes, declaring that notice of infirmity in a negotiable instrument or defect of title is actual knowledge thereof or "knowledge of such facts that his [the person to whom negotiated] action in taking the instrument amounted to bad faith." The propriety of resorting to that statute is expressed in Union Bank & Trust Company v. Girard Trust Company, 307 Pa. 488, 161 A. 865. Recognizing the difficulty, if not impossibility, of giving an accurate, comprehensive definition of the term, we said in Kentucky Rock Asphalt Company v. Mazza's Adm'r, 264 Ky. 158, 94 S. W. (2d) 316, 319:

> "It is well understood that the term 'bad faith' as used in the statute does not necessarily involve furtive or evil motives, but has a commercial sense of disregard of and refusal to learn the facts when available. The circumstances and conditions may

be so cogent and obvious that to remain passive amounts to bad faith. Where a purchaser has actual knowledge of suspicious circumstances or facts coupled with the means of informing himself of the facts and willfully refrains from making inquiries, his intentional ignorance may amount to bad faith."

We consider the evidence on this point. The proceeds of the War Risk Insurance and bonus certificates constituting most of the deposit were payable to Scott as executor of Richard H. Sommers. The bank account was identical. This obviously proclaimed the nature of the deposit as a trust belonging to the estate of the decedent, Sommers. As we have shown, the bank accepted a check drawn by Scott as executor on that account in satisfaction of his personal note. All checks involved in this suit were so signed. The check was given the bank the same day the deposit was made and all the others within a week following. A small part ($175) only was used for bills of the testator. As disclosed in the other appeal (Gibbs v. Peoples National Bank, supra), Scott was not only named executor of Sommers' will, but also as his residuary legatee. When he opened the bank account he showed the will to the officers of the bank and told them that he would personally get about $3,000 of the money. The cashier testified that Scott told him that everything had been left to him, or that the biggest part of the money belonged to him; that he wanted to pay the bank what he owed it and that he had no other obligations to amount to anything. The cashier further testified that none of the officers had any occasion to inquire whether Scott was diverting the fund or not.

The presumption that the executor would apply the funds to their proper purposes ceased to exist when the bank accepted his check as executor in payment of his personal debt. Grace v. Corn Exchange Bank Trust Company, 171 Misc. 522, 14 N. Y. S. (2d) 400. In Pennsylvania Company v. Ninth Bank & Trust Company, 306 Pa. 148, 158 A. 251, the facts were quite analogous, the dual position of the bank was pointed out, and it was held that having received a trustee's check to cover a personal overdraft, the bank acquired knowledge of facts essential to show a breach of trust and had participated in the transaction in both capacities. In the instant case the bank not only had so participated in the diversion of the trust fund, but the conversations with

Scott tended to notify its officers of his purposes. Supplementing this, the payees of some of the checks and the apparent nature of the accounts being paid loudly proclaimed a personal use, e. g., the payment of taxes on Scott's own property. All these circumstances, we think, bring the bank within the liability declared or recognized by the statute for paying the checks, namely, knowledge of such facts that its action amounted to bad faith.

In fairness to all parties, it should be said that there appears to have been no wilful wrong committed by any of them. Scott's interpretation of the will had been confirmed, he states, by the county judge. He believed there would be ample funds to satisfy the testator's creditors and the other devisees, and that he had a legal right to use the money.

The judgment is affirmed on the original appeal, and reversed on the cross-appeal.

Whole court sitting, except Judge Perry.