## Taylor et al. v. Citizens Bank of Albany.

March 24, 1942.

150

Duncan & Duncan and Ward R. Case for appellants.

J. G. Smith and J. A. Flowers for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

In January, 1936, W. E. Taylor was appointed administrator of the estate of Alfred Yahnig, a resident of Fentress County, Tennessee. He continued to act in that capacity until his death in September, 1938. There came into the administrator's hands three checks, each of which was made payable to W. E. Taylor, administrator of the estate of Alfred Yahnig. One check was for $760.68, another was for $775.48 and the third one was for $640.37. Taylor indorsed each check as administrator, and individually. He placed the proceeds of the first two checks to the credit of his individual account in the Citizens Bank of Albany. The first check was deposited on February 24, 1936, and the second one on March 18th of that year. As to the third check, $600 of it was deposited to Taylor's individual account and the balance of $40.37 was delivered to him in cash. The entire proceeds of the checks, with the exception of $253 which was used for the benefit of the estate, were checked out by Taylor for his individual use. Taylor was hopelessly insolvent and the heirs of Yahnig are seeking to recover from the Bank the funds lost to the estate. The Bank denied liability and the case was submitted without the intervention of a jury upon an agreed statement of facts. This appeal is from a judgment in favor of the Bank.

The statement of facts shows that the Bank had no actual knowledge that Taylor was committing a breach of his obligation as fiduciary other than "such as may appear or be attributable to it, if any, from the face of the checks deposited and the checks paid out by it"; and that it had no knowledge of any facts that would have amounted to bad faith on its part "in the receiving of such checks for deposit to the personal account of said fiduciary, and in paying out the aggregate amount of same on the personal checks of W. E. Taylor, other than such as may appear or be attributable to it, if any, from the face of such checks deposited or from the checks paid by it." It was also stipulated that the Bank was not a

creditor of Taylor and did not receive any of the funds in question; that it had no actual knowledge of the residence of Alfred Yahnig, deceased; that it did not know the source of Taylor's appointment as administrator; that Taylor had an account with the Bank between 1933 and 1936; that during this time he, with others, was engaged in the garage and auto sales business in Albany, in the sale and manufacture of lumber; that he also dealt in livestock, and owned several hundred acres of land in Clinton County; and that he was a highly respected citizen and his reputation for honesty and fair dealing was good.

The case involves the construction of the latter part of Section 4711-8 of the Statutes. This section reads:

"If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith."

The appellants concede that this statute relieved the Bank of any duty to inquire whether or not Taylor committed a breach of trust in depositing the funds of the Yahnig estate to his own credit, or in withdrawing them upon his personal check. They insist, however, that facts appear which gave the Bank notice that a breach of trust was being committed and that it did not have a right to ignore those facts. It is insisted that the Bank had notice of Taylor's misuse of the funds by virtue of notations on certain checks following the word "For." Some

of these checks showed that they were issued in payment of livestock and feed, and were drawn at a time when Taylor's personal funds in the Bank were not adequate to cover them. It is earnestly insisted that these circumstances charged the Bank with knowledge of such facts that its action in paying the checks amounted to bad faith.

The Bank cites the case of Roberts v. Drovers' National Bank, 199 Ky. 439, 251 S. W. 198, in support of the proposition that the notation on the face of the check showing the purpose for which it was drawn after the word "For" is generally used by the maker to remind him of the nature of the transaction in which the check was involved, and is not intended to give notice to the bank that the check was given in a conditional transaction. The opinion goes on to say that it was the purpose of the Negotiable Instruments Act to relieve banks of the necessity of looking to the fulfillment of all contracts and also relieve them of the responsibility of making inquiry as to the nature and uprightness of each transaction before the payment of notes and checks which are regular on their face. The Bank points out also that, for all it knew, even the checks upon which Taylor made a notation after the word "For" might have been drawn in the carrying out of his trust.

In the case of Peoples National Bank v. Guier, 284 Ky. 702, 145 S. W. (2d) 1042, we were called upon to construe the statute in question (Section 4711-8). There we were confronted with a situation where the fiduciary had discussed with officers of the Bank, which was held liable, his purpose, and also the Bank participated in the diversion of trust funds through the fiduciary's payment to it of a note owing by him. Furthermore, the checks were drawn by the fiduciary in his official capacity. In commenting upon the term "bad faith," it was pointed out in the Guier case that bad faith, as used in the Negotiable Instruments Act (Section 3720b-56 of the Statutes), does not necessarily involve furtive or evil motives, but has a commercial sense of disregard of and refusal to learn the facts when available; and that the circumstances and conditions may be so cogent and obvious that to remain passive amounts to bad faith. See Kentucky Rock Asphalt Co. v. Mazza's Adm'r, 264 Ky. 158, 94 S. W. (2d) 316.

We are confronted here with no such circumstances

as appeared in the Guier case, and when the alleged bad faith on the part of the Bank is measured by the definition approved for the term in that case, we think it falls short of charging the Bank with knowledge of such facts that its action in paying out the checks amounted to bad faith.

It follows from what has been said that it is our view that the judgment should be and it is affirmed.