**MICHAELS ENTERPRISES, INC., and James A. Michaels, Jr., Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 17137.

United States Court of Appeals
Eighth Circuit.

Jan. 11, 1965.

Certiorari Denied March 29, 1965.
See 85 S.Ct. 1089.

**2**

Murry L. Randall, St. Louis, Mo., made argument for appellant and filed brief with Morris A. Shenker, St. Louis, Mo.

Grove G. Sweet, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee and filed brief with Richard D. FitzGibbon, Jr., U. S. Atty., Frederick H. Mayer, Asst. U. S. Atty., St. Louis, Mo.

Before MATTHES and RIDGE, Circuit Judges, and HANSON, District Judge.

RIDGE, Circuit Judge.

This case is again before this Court "for reconsideration of the sufficiency of the evidence" to sustain the "imposition of nonconcurrent sentences" for appellants' found violation of § 5603(b) (5) and (b)(1), Title 26, U.S.C.A.

 After remand (376 U.S. 356, 84 S.Ct. 783, 11 L.Ed.2d 755) this appeal was unconditionally restored to the docket of this Court. Thereafter, "added briefs" were filed and rearguments made. Neither by added briefs nor at reargument do appellants in anywise impugn the previous disposition this Court made of points 1, 2, 3, and 5, originally raised in this appeal. Manifestly, a reconsideration of such assignments of error are not within the ambit of remand of this case to this Court, *ante*. Consequently, we adhere to the disposition of appellants' assignments of error 1, 2, 3, and 5, raised in this appeal, as found at 321 F.2d 913.

Appellants' point 4, originally raised in this appeal, is set forth at page 915 of that opinion. In their "added brief" appellants restate that assignment thus:

"Since there was no evidence that appellants failed to produce for inspection any invoices which were still in existence (at the time of the inspection hereinafter considered) their conviction on Count I (of the instant indictment) must be reversed. For simple justice dictates that they cannot be convicted of failing to produce that which they did not have." (Par. added.)

namely, the documents required to be kept on the premises of "every retail dealer in liquors" as provided in Chapter 51 of Title 26, U.S.C.A., Supp.

The presentation which the Government now makes to appellants' above contention is circumscribed by it as follows:

"At most (under a given factual situation) it could be argued that the offense charged in Count II (of appellants' indictment), failure to keep records, is included in, and duplication of the offenses charged in Count I (thereof), failure to 'preserve and produce' records required to be kept. Should the evidence show that only records not kept were not produced, then the proper procedure would be to vacate the sentence under Count II. Prince v. United States (1957) 352 U.S. 322 [77 S.Ct. 403, 1 L.Ed. 2d 370]. However, should the evidence show that some records were not kept, and that some were in fact kept but not produced, then the conviction (of appellants) on both counts (of the instant indictment) was proper." (All par. after first one noted, added.)

As a consequence of the foregoing, some clarification and enlargement of the factual statements found in our previous opinion must be made.

 Before doing so we think it should be pointed out that appellants in this appeal have not heretofore contended before this Court that the evidence adduced at their trial, *qua* evidence, was insufficient to sustain their convictions on either count of their indictment. On the contrary, the only attack they make on their convictions has been legally, not factually, premised. That is to say, appellants' contention in this appeal is, and always has been, that since the jury found they did not keep invoices, books, and records on the business premises of Michaels Bar as they were required by law so to do, they cannot be convicted of failing to produce such records for inspection by agents of the Alcohol and Tobacco Tax Unit. Appellants' argument, as previously and now made in support of that contention, has singularly been premised in the rulings made in Heflin v. United States, 358

U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961); and Milanovich v. United States, 275 F.2d 716, 720 (4 Cir. 1960), where charges of "bank robbery" and "receiving stolen property" were considered to be concomitant offenses for which separate prosecutions could not be sustained under the Federal Bank Robbery Act, 18 U.S.C.A. § 2113. The very apparent distinguishment of the factual premise giving rise to the rulings made in the above-cited authorities, and the facts giving rise to appellants' prosecutions and convictions in the case at bar, is in our opinion sufficient to sap the foundation of any merit existing for the contention the appellants make, *ante*, and a mere statement thereof is all that need here be made.

Appellants, by point 5 as made in their original brief, did contend "the evidence as to intent" was insufficient to sustain their convictions; but, as that matter was presented, disposition thereof was made as a matter of law, as appears at pages 915–916 of 321 F.2d.

Appellants' prosecution under Count I of the indictment in the case at bar stems from their failure to produce for inspection by agents of the Alcohol and Tobacco Tax Unit, records which, as a retail dealer in distilled spirits, wines, and beer, Michaels Bar was required to keep and preserve at its place of business. Chapter 51, Title 26, United States Code, requires a retail dealer of distilled spirits to keep at its place of business in book form records, or invoices of all distilled spirits, wines and beer received (Section 5124, I.R.C. 1954, revised) and requires the dealer to preserve and produce same for inspection during business hours by agents of the Alcohol and Tobacco Tax Unit (5146 I.R.C. 1954, revised) when called upon so to do.

As made manifest in the previous opinion of this Court, such an inspection of records at Michaels Bar was first attempted to be made on August 29, 1961. The Government's evidence established that when agents of the Alcohol and Tobacco Tax Unit then appeared at Michaels Bar they identified themselves and made certain tests upon whiskey situated at the bar. While doing so, one of them observed "between five and possible ten" invoices on the back bar, near the cash register, but he did not then make an examination thereof. Later, the agents made request of the night manager who was then in charge of the bar, for all invoices or records as to distilled spirits received by Michaels Bar for the past two years. He told them he did not know where they were kept. Thereafter, the agents requested permission to make an examination of the basement of the premises, the door to which was locked. The night manager stated he did not have the key thereto. While the agents were then in the premises, an attorney arrived at the bar and informed the investigators that the individual appellant was on vacation and if the agents would return the next day the individual appellant would return and they could complete their inspection.

The next day the agents again appeared at the premises of Michaels Bar, and made personal request of the individual appellant, who was President of the corporate appellant, to produce all invoices or a record of distilled spirits received at Michaels Bar for the past two years. At that time the individual appellant told the agents the invoices were around someplace, but he would have to "look them up." Thereafter, at the request of the agents, he unlocked the door to the basement proper and the agents made an inspection thereof. While so doing they noticed a room marked "Office", the door to which was locked. They asked Michaels for the key to the door. Michaels stated he did not then have a key to that room but he might be able to get one. The agents again asked Michaels to produce all records or invoices of distilled spirits received at the bar. After making conversation with the agents and a telephone call to some unidentified person, Michaels informed the agents that he did not think they had any right to inspect the premises or to request his invoices or records, and that he was not going to

**4**

give them to the agents until he saw his attorney. He then left the bar premises and did not return, although the agents remained thereon until 11:30 P.M.

Early the next morning, the agents returned to the bar premises. That afternoon, petitioner and his attorney arrived at the premises. The agents again asked Michaels for all invoices for distilled spirits received at the bar for the past two years. Michaels produced the key to the "Office" in the basement, and the agents entered. Michaels told the agents he had to drive out in the County to get the key, as he had left it at his farm when he was on vacation. The agents made an examination of the office and other parts of the basement proper, but found no invoices. They again requested Michaels to produce all the invoices he had. Michaels then went into a part of the basement proper and reached up on some stacked furniture and returned with a cardboard box containing miscellaneous papers. Only 37 invoices for distilled spirits purchased and delivered to Michaels Bar were among such papers. Twenty (20) of those invoices related to purchases and deliveries made to the bar from 7/12/61 to 8/22/61, a period of shortly more than one month after the flood hereinafter mentioned. The other 17 invoices were for the year 1958. When asked for any other invoices, Michaels told the agents he could not find any more. It was then that Michaels told the agents about a flood occurring in the basement of the bar premises in June 1961, and of damage to his records and invoices, along with other personal property, all of which was removed from the basement and destroyed because of a "health hazard." Thereafter, one of the agents examined the 37 invoices, *ante*, and made desired notations therefrom. Those invoices were then returned to appellants' possession. None of those invoices was introduced at the trial by appellants. After making a further inspection of the basement, the agents then left the premises.

The Government's evidence adduced at appellants' trial established, among other things, that appellants should have had in their possession 450 invoices for distilled spirits purchased and delivered to Michaels Bar during the two-year period prior to August 29, 1961. Copies of 69 invoices introduced into evidence by the Government established purchases and deliveries made to Michaels Bar after June 1961 and after the time of the flood above mentioned.

It is undisputed in the record of this case that when purchases of distilled spirits, wine, and beer were made and delivered to Michaels Bar it was the practice for the individual appellant, or some employee of the Corporation, to sign invoices for the same, receive a copy thereof, and place such document on the back bar, in the vicinity of the cash register, or a drawer thereof, and the same were so retained until they were delivered for bookkeeping purposes to a C.P.A. or someone from his office, who kept the books for Michaels Bar. Shortly after the books were posted, i. e. within two or three weeks' time, the invoices, along with other bookkeeping data, were returned to the place of business of the corporation.

It was the individual appellant's testimony that it was an invariable custom to "keep" and he did save all the documents returned to the corporation's place of business after the use thereof for bookkeeping purposes. This was done by "placing all of them in boxes" which were stored "downstairs" in the basement of the corporation's business premises. We think the only inference to be made from the record evidence is, that "all invoices of, and bills for, all distilled spirits, wines, and beer" that were ever "received" at the business premises of Michaels Bar were so kept. No contradiction appears in the record regarding the above established facts; nor this added fact, that a flood caused by defective sewers did occur in the basement of Michaels Enterprises, Inc.'s place of business in June 1961. Several minor floods had occurred in that basement prior to that date. Testimony in respect to such matter was affirmed by several witnesses. The individual appellant's testimony, also confirmed, was to the effect that all of the

records, bills, and papers that were stored in the basement of Michaels Bar, along with other personal property, were so damaged by the June 1961 flood water and, solely because of the damaged condition thereof, the same were removed from the basement and destroyed as undesirable trash because they created a health menace.

The Government's contention and argument made at appellants' trial was to the effect that evidence of the flood, *ante*, was adduced by appellants for the purpose of covering up the fact that the appellants did not keep some of the records which they were required by law to keep. However, from a close perusal of the record we do not think that such is a valid assumption that can here be made. The storage of invoices, revealing deliveries of distilled spirits to Michaels Bar, in the basement premises was amply affirmed by the testimony of witnesses other than appellant. Hence the very most that might reasonably be inferred from the evidence in this case is that it affords a basis for a conclusion that appellants were careless and negligent in undertaking to "keep" invoices for distilled spirits delivered to Michaels Bar by storing the same in the basement, as they did, with knowledge of probable flood occurring therein which would cause damage or destruction thereof. Be that as it is, we now consider the evidence here adduced as being insufficient to satisfy the quantum of proof necessary to establish criminal conduct on appellants' part for failure to "keep" records, as charged in Count II of the instant indictment. The reference in the previous opinion of this Court appearing at page 917 of 321 F.2d: "Concededly, the appellants failed to 'keep' some of the documents and records they were required to maintain as provided in Sections 5124(a) and 5603(b) (1) of Chapter 51," Title 26, U.S.C.A., was singly prompted by this Court's consideration of invoices that were damaged and destroyed as a result of the flood, *ante*.

Absent evidence that such "flood" did not occur, (and no attempt was made by the Government to contra-dict that fact) there are no other facts appearing here from which it might be inferred that appellants "knowingly" failed to "keep" records as charged in Count II of their indictment. Fortifying authority is not deemed essential to sustain the proposition that an inadvertent, fortuitous, unintended happening of events should not be considered as a "knowing" failure to "keep" records so as to subject one to criminal punishment for having failed so to do.

The evidence adduced at appellants' trial did establish they should have had in their possession 69 invoices revealing sales and deliveries of distilled spirits, etc., to Michaels Bar after the flood. Only 20 invoices were produced by appellants for inspection of the agents. The individual appellant's testimony was to the effect that he clearly understood request was made of him to produce all sales invoices he had on the premises of Michaels Bar, showing delivery of distilled spirits thereat for a two-year period prior to August 29, 1961. On cross-examination, he testified as follows:

"Q. Would all of the invoices for the past two months since that flooded condition you talked about, would all of those invoices have been in there?

"A. The ones that were located, the ones I just had there.

"Q. Where would the others be?

"A. Maybe they were in a drawer.

"Q. Didn't they ask you to give them all of the invoices you had?

"A. All they asked me to open that door, open the office door.

"Q. Now you misunderstood my question. Did they ask you to give them all of the sales invoices that you had?

"A. Yes, sir. Yes, they said to give us the invoices.

"Q. Did you give them all the sales invoices that you had?

"A. All that I had in that box there.

**6**

"Q. I am not talking about the box. I am talking about all of the sales invoices. All of the sales invoices that you had on the premises.

"A. I couldn't swear to that because I didn't go searching in drawers and that upstairs after that, actually.

"Q. Didn't they ask you for all of the sales invoices you had at your establishment?

"A. I guess that is the way he meant it, yes."

From the individual appellant's own testimony as given at the trial of this case, buttressed in part, as it was, by the testimony of the appellants' accountant as to the manner by which invoices were returned to Michaels Bar,[1] as well as that of other witnesses as to how invoices for distilled spirits delivered to the bar were receipted for and kept, we think the only reasonable conclusion to be reached is that appellants did "keep" all invoices of distilled spirits delivered to Michaels Bar prior to and after the time of the flood, *ante,* some of which they had in their possession relating to the period after the flood which they knowingly did not produce for inspection by the agents. From the operative facts above stated, we can now only determine that no competent probative evidence appears in this record from which it reasonably can be inferred that appellants "knowingly" failed to "keep" invoices which they were required to keep as provided in § 5603(b)(1) of Title 26, U.S.C.A. However, a very reasonable inference, fairly established beyond any reasonable doubt, is that some such invoices retained by appellants in their possession after the flood, were "knowingly" not produced for inspection

of the agents, in violation of § 5603(b)(5) of Title 26, U.S.C.A.

Therefore, the appellants' convictions on Count I of the indictment should be, and the same are, affirmed. Their convictions on Count II of such indictment are reversed.

1. The books of the corporation, at all times here considered, were kept and retained at the office of the C.P.A., and not at the place of business of the corporation as required by § 5124, T. 26, U.S. C.A. Such books were offered in evidence by appellants at their trial, but *rejected by the trial court as being in*-

adequate compliance with the mandate of that statute, since they did not contain information as to the quality and quantity of liquor purchased and delivered at the premises of Michaels Bar. No point is here made by appellants in respect to that ruling.