GENERAL INSURANCE CO. OF AMERICA,
a corporation, Plaintiff-Appellant,

v.

COMMERCE BANK OF ST. CHARLES,
a corporation, Defendant-Respondent.

No. 35080.

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 8, 1974.

Rehearing Denied Feb. 11, 1974.

Kenney, Leritz & Reinert, David M. Duree, St. Louis, for plaintiff-appellant.

George E. Murray, St. Charles, for defendant-respondent.

KELLY, Judge.

This appeal is from the order of the trial court sustaining defendant's motion to dismiss on the ground that the petition did not state a cause of action upon which relief could be granted, and ordering said petition dismissed at plaintiff's costs. The single issue presented for review is the propriety of the trial court's order.

The facts, gleaned from the appellant's petition, assuming all allegations therein to be true, and construing them favorably to the appellant, are that in January, 1968, the Probate Court of St. Charles County appointed George O'Lary guardian of the person of Mary Terhune, an incompetent. Mr. O'Lary furnished a guardian's bond with plaintiff as surety thereon in an amount of $5,000.00 and entered upon the performance of his duties under the ap-

pointment. He opened a checking account in respondent Bank in the name of "G. W. O'Lary, Guardian of the person of Mary Terhune." From April, 1971, through November, 1971, Mr. O'Lary misappropriated $10,000.00 from the guardianship account. The modus operandi was carried out by preparing and cashing at the respondent bank twenty-five (checks) made payable to "G. W. O'Lary," signed by "G. W. O'Lary" as the drawer, and drawn against the guardianship account. Two of these checks contained handwritten notations on the face of the checks stating that they were in payment of services. Similar notations on the back of two other checks read:

"Payment in full for services as guardian—January '71 thru Apr. '71 (a $100.00 per Mo.) as per Probate Court's 4-30-71 verbal order."

"Payment for future services—in advance—as per Court's verbal order on 6-11-71."

There are no allegations contained in appellant's petition with respect to any notations on the face or the back of the remaining 21 checks which are referred to and incorporated into the petition by Exhibit G attached thereto. Exhibit G consists of a list containing dates, the name of the payee—"G. W. O'Lary"—check number, amount, and endorsements. These endorsements were of three different kinds: (1) "For deposit only G. W. O'Lary," (2) "St. Charles Transit G. W. O'Lary," and (3) "G. W. O'Lary Mrs. G. W. O'Lary."

On November 17, 1971, Mr. O'Lary was removed as guardian of the estate of the incompetent and was himself declared incompetent by the Probate Court of St. Charles County at a subsequent date which is unspecified in the petition. William C. Goellner was appointed successor-guardian of the person and estate of Mary Terhune and also of the person and estate of Mr. O'Lary. On February 24, 1972, Mr. Goell-

ner, on behalf of Mr. O'Lary, filed a final settlement in the estate of Mary Terhune and revealed therein that $10,400.00 of 'the assets of the estate of Mary Terhune had been dispersed by Mr. O'Lary, as guardian, to himself without authority or approval of the probate court.

On May 12, 1972, the Probate Court of St. Charles County found Mr. O'Lary in default in the amount of $10,000.00 and entered judgment against him for that amount and against the appellant, as surety, in the amount of $5,000.00, the face amount of the bond on which appellant was the surety. Appellant satisfied the judgment and filed this present suit under its subrogation rights and based upon the respondent's alleged participation in the misappropriation from the guardianship estate of Mary Terhune.

The parties to this appeal agree that the pleadings in this case are governed by the provisions of the Uniform Fiduciaries Law, Secs. 456.240-456.350, RSMo 1969, V.A.M.S., and in particular, Sec. 456.290, RSMo 1969, V.A.M.S.[1]

The pertinent part of the latter section, Sec. 456.290, is as follows:

"If a deposit is made in a bank to the credit of a fiduciary as such, the bank is authorized to pay the amount of the deposit or any part thereof upon the check of the fiduciary, signed with the name in which such deposit is entered, without being liable to the principal, unless the bank pays the check with *actual knowledge* that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to *bad faith.*" (Emphasis supplied).

To plead a cause of action under this section of the Uniform Fiduciaries Law the plaintiff must state sufficient factual allegations showing that the defendant

---

1. All statutory references are to RSMo 1969, V.A.M.S. unless otherwise stated.

in the cause had either (1) actual knowledge of a breach of the fiduciary obligation by the fiduciary or (2) had knowledge of such facts that its action in paying the checks amounted to bad faith. Southern Agency Company, Inc. v. Hampton Bank of St. Louis, 452 S.W.2d 100, 105 (Mo. 1970). "Actual knowledge," as the terms are used in the Law, means awareness that, at the moment, the fiduciary was defrauding the principal. Southern Agency Company, Inc. v. Hampton Bank of St. Louis, supra, 1. c. 105 [2]. It means express factual information that the funds are being used for private purposes in violation of the fiduciary relationship. Maryland Casualty Company v. Bank of Charlotte, 340 F.2d 550, 553 (4th Cir. 1965).

■ Examining appellant's petition in light of the foregoing, we may conclude from the well pleaded facts that at least one of the respondent's employees knew of the transfer of funds from the guardianship account to that of Mr. O'Lary's personal account and that at least one of respondent's employees was familiar with the provisions of Sec. 475.265 of the Probate Code of Missouri which authorizes payment for only those services which the guardian has performed. Nevertheless, even under these pleadings a bank may not be found to possess "actual knowledge" of a breach of trust because at some stage of the handling of the fiduciary account it could, by inspection of public records or by piecing together all the facts known by different employees of the bank, become aware of a breach of trust. Cassel v. Mercantile Trust Co., 393 S.W.2d 433, 439–440 [7], 442 [15] (Mo.1965); New Amsterdam Casualty Co. v. National Newark & Essex Banking Co., 117 N.J. 264, 175 A. 609, 618–619 (Ct.Ch.1934). And see Colby v. Riggs Nat'l Bank, 92 F.2d 183, 195 [9] (D.C.Cir. 1937). The prime reason for enactment of the Uniform Fiduciaries Act is to facilitate banking transactions by relieving depository banks of their common law duty to inquire into the propriety of fiduciary transactions. Cassel v. Mercantile

Trust Co., supra, 393 S.W.2d 1. c. 437, n. 1; Sugarhouse Finance Company v. Zions First National Bank, 21 Utah 2d 68, 440 P.2d 869, 870 [1] (1968). The Act permits depository banks to indulge in the presumption that the fiduciary in withdrawing funds from the fiduciary account is acting lawfully and in accordance with his duties. Cassel v. Mercantile Trust Co., supra, 393 S.W.2d 1. c. 437 [2]; New Amsterdam Casualty Co. v. National Newark & Essex Bank Co., supra, 175 A. 1. c. 614. The bank's failure to inquire whether a fiduciary by depositing into his personal account funds known to be fiduciary funds is benefitting himself in derogation of the rights of his principal will render itself liable only if the bank itself benefits financially from the transaction. Southern Agency Co. v. Hampton Bank, supra, 452 S.W.2d 1. c. 105–106 [3]; Cassel v. Mercantile Trust Company, supra, 393 S.W.2d 1. c. 437 [2]; Maryland Casualty Co. v. Bank of Charlotte, supra, 340 F.2d 1. c. 554–555; Rheinberger v. First National Bank of St. Paul, 276 Minn. 194, 150 N. W.2d 37, 41 (1967). The rationale is that in those instances where the circumstances are so obvious to the bank that defalcations are occurring, and it remains passive, the bank is acting in what amounts to "bad faith." Southern Agency Co. v. Hampton Bank, supra, 452 S.W.2d 1. c. 106 [3]; People's National Bank v. Guier, 284 Ky. 702, 145 S.W.2d 1042, 1047 (1940). And see Taylor v. Citizens Bank, 290 Ky. 149, 160 S.W.2d 639 (1942).

■ "Bad faith" is not defined in the Uniform Fiduciaries Act. "Good faith", however, is referred to in Sec. 456.240 [2] wherein it is stated: "2. A thing is done 'in good faith' within the meaning of sections 456.240 to 456.350, when it is in fact done honestly, whether it be done negligently or not." "Bad" being the antonym for "good," it then follows that a thing is done in "bad faith" when it is in fact done dishonestly and not merely negligently. Davis v. Pennsylvania Co., 337 Pa. 456, 12 A.2d 66, 68 [1] (1940). Moral guilt is not

however comprehended within this term "bad faith." Maryland Casualty Co. v. Bank of Charlotte, supra, 340 F.2d 1. c. 554 [4]. Evil motive is not the gauge; it .is whether it is " 'commercially' unjustifiable for the (bank) to disregard or refuse to learn facts readily available." Maryland Casualty Company v. Bank of Charlotte, supra, 1. c. 554 [4]. The facts and circumstances must be so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction. Transport Trucking Co. v. First National Bank in Albuquerque, 61 N.M. 320, 300 P.2d 476, 479 [1] (1956).

Appellant herein alleges that the circumstances surrounding Mr. O'Lary's withdrawal of guardianship funds, and especially the notations on the checks referred to, supra, were so suspicious that the respondent would have investigated them had it not been acting in bad faith. This contention has no merit. In Taylor v. Citizen's Bank, supra, three checks payable to an administrator in his capacity as the administrator of the estate of one Alfred Yahnig, came into the hands of the administrator; he endorsed them in his capacity as administrator of the aforesaid estate and also individually. The proceeds of two of the checks, in their entirety, were placed in his own bank account; the third, he deposited partly in his own bank account and received the balance in cash. Each of the checks when cashed bore handwritten notations stating that it was in payment "for livestock" or "for feed." The court held in a suit by the heirs of Mr. Yahnig against the bank to recover for the funds lost to the estate by Mr. Taylor's misappropriation of these checks that although the items noted were unlikely to be, and in fact were not, administration expenses, there was no evidence of bad faith. The court said that the notation "for ———" is generally used by the maker as a reminder to himself of the nature of the transaction in which the check was in-

volved and not to give notice to the bank, and that said notation might well have been made in furtherance of the trust imposed on the endorser. Taylor, supra, was decided under the Uniform Negotiable Instrument Law; nevertheless, it is in point here because the Uniform Fiduciaries Act's definition of "bad faith" is derived from that contained in the Uniform Negotiable Instruments Law.

■ The relation of a bank to a trustee-depositor is that of creditor and debtor. The bank's obligation to the trustee, to honor his checks when drawn to form. It owes no duty to the trust estate save to refrain from participating in misappropriation of the funds. New Amsterdam Casualty Co. v. National Newark & Essex Banking Co. et al., supra, 175 A. 1. c. 613. "The mere payment of the money to or upon the check of the depositor does not constitute a participation in an actual or intended misappropriation by the fiduciary, although his conduct or course of dealing may bring to the notice of the bank circumstances which would enable it to know that he is violating his trust. Such circumstances do not impose upon the bank the duty or give it the right to institute any inquiry into the conduct of its customer, in order to protect those for whom the customer may hold the fund, but between whom and the bank there is no privity." Perry on Trust (7th Ed.) 176. The United States Supreme Court, in Central National Bank of Baltimore v. Connecticut Mutual Life Insurance Co., 104 U.S. 54 1. c. 63–64, 26 L.Ed. 693, said: "A bank account, it is true, even when it is a trust fund, and designated as such by being kept in the name of the depositor *as trustee*, differs from other trust funds which are permanently invested in the name of trustees for the sake of being held as such; for a bank account is made to be checked against, and represents a series of current transactions. The contract between the bank and the depositor is that the former will pay according to the checks of the latter, and when drawn in proper form the bank is

bound to presume that the trustee is in the course of lawfully performing his duty and to honor them accordingly."

 We conclude therefore, that respondent in this case was entitled to assume that the notations made by the guardian were made in carrying out the purposes of the guardianship. Without more, it is expecting too much to require a bank teller to suspect otherwise. Appellant alleged that the aforesaid transactions "were of such unusual and suspicious nature" that the respondent should have inquired whether these funds were being used for the benefit of the guardianship; that because the respondent maintains a probate and trust department "thoroughly cognizant" of the duties and responsibilities of executors and guardians and of the practices and procedures relating to the administration of estates, the respondent acted in bad faith in failing to inquire into the transactions of Mr. O'Lary in this respect. Appellant's petition fails to allege sufficient facts from which bad faith on the part of the respondent can be gleaned. There is no pleading that respondent benefitted from the deposit in Mr. O'Lary's account. Nor is it pleaded that any specific employee handled all of the transactions complained about, nor that these transactions were ever brought to the attention of the probate or trust department of the bank, which was not acting in the guardianship in any manner whatsoever, so far as we can learn from the pleadings. In Southern Agency Co. v. Hampton Bank of St. Louis, supra, 452 S.W.2d l. c. 105, in testing the sufficiency of the evidence, the court said: "Plaintiff has not cited a case, and we do not find any, which holds under facts such as we have here that a bank is liable to a principal, in a conversion action occasioned by misappropriation by the fiduciary, for failure to inquire as to whether or not the intended deposit to the fiduciary's account or the subsequent withdrawal of funds from the account was for the benefit of the fiduciary in derogation

of the rights of the principal, *unless* the bank is benefitting financially from the transaction . . ."

We affirm.

DOWD, C. J., and SIMEONE, J., concur.