Gregory John **FAVRETTO** and **FAVCO, Inc.,** Plaintiffs,

v.

Donald L. **EVANS,** in his capacity as **Secretary of Commerce of the United States, and National Marine Fisheries Service; James W. Balsiger,** in his capacity as **Regional Director, Alaska Region, National Marine Fisheries Service; Defendants.**

No. A01–0281 CV(RRB).

United States District Court, D. Alaska.

July 11, 2002.

*ORDER DENYING PLAINTIFFS' MO-
TION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANTS'
CROSS–MOTION FOR SUMMARY
JUDGMENT*

BEISTLINE, District Judge.

## I. *INTRODUCTION*

On appeal by way of cross-motions for summary judgment is "the decision of the Hon. [sic] Edwin Bladen, administrative law judge [ (ALJ) ], rendered August 2, 2000, and affirmed by the final administrative decision of the National Oceanic and Atmospheric Administration [ (NOAA) ] on August 22, 2001." [1]

Plaintiffs/Appellants Gregory John Favretto and FAVCO, Inc. (hereinafter referred to as "FAVCO") claim that the ALJ's ruling should be reversed because FAVCO should not have been penalized for failing to produce that which it did not have.[2] Additionally, FAVCO argues that it could not have reasonably been expected to have the documents in question, given the ambiguity of the reporting requirements. On appeal, FAVCO argues that the ALJ did not have a reasonable basis for the factual determinations made. Defendant Donald L. Evans, in his capacity as Secretary of Commerce of the United States, and Defendant James W. Balsiger, in his capacity as Regional Director, Alaska Region, National Marine Fisheries Service (hereinafter collectively referred to as "NMFS"), oppose these arguments and

---

**1.** Clerk's Docket No. 9 at 1–2. "In reviewing an administrative agency decision, summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *City and County of San Francisco*

*v. United States,* 130 F.3d 873, 877 (9th Cir. 1997) (internal citations omitted).

**2.** "The point is that the Plaintiff's could not show Mr. Wisher something they did not have." Clerk's Docket No. 15, at 3.

contend: (1) that the failure to comply with a statutory requirement to maintain certain documents is not a valid defense to the charge of failure to produce the same for inspection; (2) that the reporting requirements were not ambiguous on their face, and especially given the fact that they were clearly explained to FAVCO by an NMFS employee; and (3) that the record supports the factual conclusions reached by the ALJ.[3]

Having carefully reviewed the record, the arguments of the parties, and the relevant case law, the Court hereby **AFFIRMS** the findings and conclusions of the ALJ rendered August 2, 2000, **DENIES** Plaintiffs' Motion for Summary Judgment, and **GRANTS** Defendants' Cross-Motion for Summary Judgment.

## II. *FACTS/PROCEDURAL HISTORY*

"In March 1998, FAVCO received an inquiry from one of its retail customers asking whether it was required to file a Groundfish Product Transfer Report (PTR) in connection with any groundfish sold by FAVCO."[4] More specifically, the customer asked, "We're wondering about these PTR's, is there any need to fill out PTR's—for us to fill out PTR's—when we get *groundfish* [emphasis added] from you?"[5] Unaware of the correct answer, FAVCO's agent/employee, Anita Barios ("Barios"), contacted the NMFS office in Anchorage to "ask if the regulations required such PTR filings for the small sales of fish that FAVCO made to its customers."[6] No one in the Anchorage NMFS office knew the correct answer. As a result, Barios was "referred to a NMFS employee named James Wisher ('Wisher') who was working in the Homer area."[7] Wisher checked the regulations and informed Barios that "FAVCO was required to prepare and file PTR's for *any* [emphasis added] sale of groundfish, no matter how small."[8]

Barios informed Favretto about her conversation with Wisher, to which Favretto replied: "Well, this is really impossible for us to do this."[9] "Shortly thereafter, Favretto telephoned Wisher to discuss the

---

3. Clerk's Docket No. 13, at 15.

4. Clerk's Docket No. 9, at 4 (citation omitted).

5. CD Recording of Oral Argument at 8:34:41–50 (June 27, 2002) (copy available at Court Clerk's Office upon request). The Court notes that this statement, in and of itself, is determinative of the fact that FAVCO was engaged in the business of selling groundfish. Additionally, Mr. Favretto previously testified that FAVCO "handle[s] almost every specie of fish that's in Alaska except mackerel and things like that." Administrative Record II, Ex. 35, at 183. Based upon this same testimony, the Court is also satisfied that FAVCO, while not a large processor of fish, is a "Shoreside Processor," as that term is defined in 50 C.F.R. § 679.2 (1997). *Id.* at 184.

6. Clerk's Docket No. 9, at 4.

7. *Id.*

8. Assuming, *arguendo*, that the reporting requirements were ambiguous, Wisher cleared up any and/or all ambiguity by providing FAVCO with an NMFS interpretation of the same. *Akootchook v. United States*, 271 F.3d 1160, 1166–67 (9th Cir.2001) (in the absence of a clear statutory answer, substantial deference is given to an agency's interpretation of its own laws); *Eisinger v. Federal Labor Relations Authority*, 218 F.3d 1097, 1100–01 (9th Cir.2000); *Horizon Mutual Savings Bank v. Federal Savings and Loan Insurance, Corp.*, 674 F.2d 1312, 1316 (C.A.Wash.1982). Therefore, the Court concludes FAVCO was on notice to prepare and file PTR's for *all* transfers of groundfish following its initial conversation with Wisher. And, because the Court finds Wisher's construction of the statute to be reasonable, there is no need for the Court to reach and/or address the original drafter's intent. *Id.*

9. CD Recording of Oral Argument at 8:35:53–55 (June 27, 2002) (copy available at Court Clerk's Office upon request).

matter. Favretto advised Wisher that it would be logistically impossible for FAVCO to prepare and file PTR's for its sales of covered [groundfish]." [10] "Wisher *reaffirmed* [emphasis added] that it was his opinion that FAVCO would be required to file PTR's for such transactions." [11] Nevertheless, FAVCO chose *not* to adhere to Wisher's interpretation of the applicable regulations and continued to operate as it had been.

As a consequence of these conversations, FAVCO contacted the head of NMFS for this particular region and a favorable letter to the special agent in charge of NOAA/NMFS enforcement for Alaska was written on its behalf from the Commissioner of the Alaska Department of Commerce and Economic Development. These actions may have led to the ultimate change in the regulation(s). Notwithstanding, before the regulations were changed, it would have been more prudent for FAVCO to either: (1) adhere to the regulations as interpreted by Wisher, an NMFS enforcement official; or (2) seek an injunction enjoining NMFS from enforcing the same. FAVCO failed to do either of these things.

On May 17, 1998, Wisher, accompanied by Special Agent Reggie Hammonds, went to FAVCO's facility for the purpose of inspecting any and/or all PTR's. [12] "Wisher was told in response that FAVCO only had PTR's for groundfish FAVCO had purchased, but had no PTR's for any sales of any groundfish because FAVCO did not fill out PTR's covering FAVCO's sale of groundfish." [13] Therefore, Wisher issued FAVCO an Enforcement Action Report (EAR) for resisting, opposing, impeding, or interfering with an authorized search or inspection. [14]

"After a few months of further noncompliance, [with the PTR reporting requirements], ... Wisher sent ... [a] report, dated October 30, 1998, to his supervisor." [15] Subsequently, NOAA served FAVCO with a Notice of Violation and Assessment (NOVA), by certified letter, dated October 19, 1999. The NOVA charged that on or about May 7, 1998, FAVCO "failed and refused, upon request of the NMFS Fishery Officer Jim Wisher, to make available for inspection the original, or copy thereof, of FAVCO's ... [PTR's] for 1998 in violation of 50 CFR 679.5(a)(13)." [16] The NOVA assessed a $1000 penalty against FAVCO.

Following a hearing on the charges, the ALJ ruled in favor of the NMFS and upheld the penalty. FAVCO "timely petitioned the Administrator of NOAA to review the decision of [the] ALJ. On August 22, 2001, NOAA ... denied FAVCO's ... petition for review. This appeal action followed." [17]

---

10. Clerk's Docket No. 9, at 4.

11. *Id.* at 5. As a result, the Court concludes FAVCO was placed on notice to prepare and file PTR'S for *all* transfers of groundfish a second time.

12. At the time, the 1997 Code of Federal Regulations required all shoreside processors to record each and every transfer of groundfish on a separate PTR. "The operator of a mothership or catcher/processor or the manager of a shoreside processor must record each transfer of groundfish product on a separate PTR." 50 C.F.R. § 679.5(g)(1)(i) (1997).

13. Clerk's Docket No. 9, at 5. This statement is also determinative of the fact that FAVCO was engaged in the business of selling groundfish.

14. 16 U.S.C. § 1857 (1998).

15. Clerk's Docket No. 18, at 9.

16. Clerk's Docket No. 9, at 7 (internal citations omitted).

17. *Id.* at 9 (citations omitted).

### III. *STANDARD OF REVIEW*

FAVCO's motion for summary judgment challenges certain NMFS regulations and the penalty assessed against FAVCO for violating these regulations.[18] NMFS's cross-motion asks this Court to affirm the penalty.

■ The Administrative Procedures Act (APA) sets forth the standards governing judicial review of findings of fact made by federal administrative agencies.[19] Pursuant to the APA, agency decisions may be set aside only if an administrative agency's findings are found to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; ... [or] (D) without observance of procedure required by law." [20] "Because this matter comes before the Court on cross-motions for summary judgment, the Court's function is to determine whether or not, as a matter of law, the evidence in the administrative record permitted the agency to make the decision that it did." [21]

### IV. *DISCUSSION*

After examining each of the arguments presented by the parties; to include FAVCO's argument that the reporting regulations were too ambiguous and therefore impossible to adhere to, the Court concludes that there is substantial evidence contained within the administrative record to support each of the factual findings and conclusions of law made by the ALJ and **AFFIRMS** the same. However, had FAVCO made some effort to comply with the reporting requirements between March 1998 and October 1998, the Court would have been more sympathetic to FAVCO's position.

■ Inasmuch as the ALJ determined that FAVCO failed to fill out the required PTR's for any and/or all groundfish shipped from its facility and subsequently provide the same to Wisher for inspection, and because simple logic suggests that one cannot be held liable for his/her failure to produce for inspection that which he or she does not have, a closer examination of the ALJ's analysis of this issue is warranted.[22] Since this appears to be an issue of first impression in this circuit, the Court looks to neighboring jurisdictions for additional guidance.

In *Michaels Enterprises, Inc. v. United States,* appellant Michaels Enterprises, Inc. ("Michaels"), a retail dealer of alcohol, argued that it could not be convicted for failing to produce certain records that it did not have.[23] In response, the defendant argued:

> At most (under a given factual situation) it could be argued that the offense charged in Count II ..., failure to keep records, is included in, and [a] duplication of the offenses charged in Count I,

---

18. *Fishing Company of Alaska v. United States,* 195 F.Supp.2d 1239, 1246 (W.D.Wash. 2002).

19. *See Dickinson v. Zurko,* 527 U.S. 150, 152, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999); *Hells Canyon Alliance v. U.S. Forest Serv.,* 227 F.3d 1170, 1176 (9th Cir.2000).

20. 5 U.S.C. § 706(2) (2001); *see Brower v. Evans,* 257 F.3d 1058 (9th Cir.2001).

21. *Fishing Company of Alaska,* 195 F.Supp.2d at 1247 (citation omitted).

22. Revised Initial Decision at 11.

23. 321 F.2d 913, 915 (8th Cir.1963), *vacated by* 376 U.S. 356, 84 S.Ct. 783, 11 L.Ed.2d 755, *remanded to and aff'd by* 340 F.2d 1 (8th Cir.1965). Because Michaels inadvertently discovered up documents that it failed to produce for inspection, the reviewing court did not address this particular issue. However, the arguments made by the parties are directly on point; and, even though they are not controlling, they are extremely helpful.

failure to "preserve and produce" records required to be kept. Should the evidence show that the only records not kept were not produced, then the proper procedure would be to vacate the failure to keep records sentence under Count II.[24]

An application of this analysis to the facts presented revealed that any and/or all charge(s) that could have been filed by Wisher, to include the failure to fill out PTR's for product shipped from its facility, are subsumed by and/or included in, and consequently a duplication of, the offense charged, i.e., failure to produce for inspection any and/or all PTR's generated from outgoing sales, upon the request of an authorized officer.[25] Therefore, the Court concludes that the ALJ's finding, with respect to this issue, and all other issues, was appropriate.

Were the rule as FAVCO interprets it, it would be too easy for shoreside processors to avoid 50 C.F.R. § 679.5(a)(13) penalties simply by failing to maintain documents and/or by destroying them whenever an authorized officer made a request to inspect the same.[26] The gravamen of the offense is not in FAVCO's failure to complete the required PTR's, which satisfies the terms of the applicable regulations. Rather, the heart of the violation is in failing to report certain transfers of processed fish to the applicable authorities, in this case the NMFS, thereby denying the appropriate authorities with the opportunity to review the same.[27] Accordingly, the Court finds that "[a] violation of the requirement to fill out ... [PTR's] found at 50 C.F.R. § 679.5(g) is not a defense to failure to produce those reports upon request." [28]

## V. CONCLUSION

In accordance with the plain wording of 50 C.F.R. § 679.5(g)(1)(i) (1997), this Court concurs with the findings of the ALJ in that Appellants, in their capacity as shoreside processors of groundfish,[29] had an obligation to fill out PTR's for both groundfish received, as well as shipped, regardless of the size and/or number of shipments, and concludes that FAVCO failed to do so.

---

**24.** *Michaels Enterprises, Inc. v. United States,* 340 F.2d 1, 2 (8th Cir.1965) *(citing Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957)).

**25.** FAVCO argues that Wisher's failure to charge FAVCO for failure to comply with the reporting and record-keeping requirements of 50 C.F.R. § 679.5(g)(1)(i) suggests that the PTR reporting and record-keeping requirements were not intended to apply to businesses such as FAVCO. Clerk's Docket No. 13, at 37. However, as the NMFS suggests, law enforcement agencies utilize prosecutorial discretion when determining whether to issue any and/or all citations for (a) violation(s). Clerk's Docket No. 18, at 6. The Department of Public Safety is a good example of one such agency that regularly employs prosecutorial discretion. In order to better understand how officer discretion applies to FAVCO's argument, one need only look to the speeding motorist. When stopped for speeding, the motorist breathes a sigh of relief when the trooper issues him/her nothing more than a verbal warning. However, were the Court to apply FAVCO's logic, the motorist should shout for joy because he/she could reasonably deduce that the officer's decision not to issue him/her a speeding ticket suggests that the speed limit does not apply to him/her. Because we know that this is not the case, FAVCO's argument, based upon a failure to cite theory, is rejected.

**26.** *Jackson v. E.J. Brach Corporation,* 937 F.Supp. 735, 740 (N.D.Ill.1996).

**27.** *Prince v. United States,* 352 U.S. 322, 328, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957).

**28.** Clerk's Docket No. 18, at 2.

**29.** A review of the administrative proceedings and/or record, satisfies this Court that FAVCO is a shoreside processor of groundfish for the purposes of 50 C.F.R. § 679.5 (1997).

As a result of these determinations, this Court further concludes FAVCO was required by 50 C.F.R. 679.5(a)(13) to produce all PTR's for inspection upon request, and that on or about May 7, 1998, FAVCO failed to make available for inspection any PTR's when asked by Wisher to do so, in accordance with 50 C.F.R. 679.5(a)(13) (1997). Accordingly, the Court **AFFIRMS** the findings of the ALJ, **DENIES** Plaintiffs' Motion for Summary Judgment, and **GRANTS** Defendants' Cross–Motion for Summary Judgment.